IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

METHOD PHARMACEUTICALS, LLC,    )
)
Plaintiff,    )
)
v.    )    CIVIL CASE NO. 2:20-cv-753-ECM
)    [WO]
H2-PHARMA, LLC,    )
)
Defendant.    )

**MEMORANDUM OPINION and ORDER**

## I.  INTRODUCTION

After nearly five years of litigation, the Court granted in part and denied in part Defendants H2-Pharma ("H2") and Brooke Cantey's ("Cantey) (collectively, "the Defendants") motion for summary judgment on the three remaining claims in Plaintiff Method Pharmaceutical, LLC's ("Method") operative complaint.[1] (Doc. 334).[2]  Method now asks the Court to partially reconsider its summary judgment Opinion ("the Opinion") under Federal Rule of Civil Procedure 59(e), which the Court construes as a motion under Rule 54(b).  Method claims it lacked notice from the Defendants' briefing of the grounds the Court would use to grant the motion—materiality. (Doc. 339).[3]  Method now seeks to present additional evidence and argument regarding materiality to the Court.  Method's

---

[1] Specifically, the Court granted summary judgment on Counts I and III of the operative (second amended) complaint but denied it for Count II.

[2] For clarity, the Court refers to the docket and page numbers generated by CM/ECF.

[3] The Court dismissed Cantey from the case, but Method does not challenge the Court's ruling regarding Cantey in this motion. (Doc. 346 at 19 n.7).

motion for partial reconsideration is fully briefed and ripe for review. After careful consideration of the arguments presented and a review of the evidence submitted at summary judgment, the Court finds the motion is due to be DENIED.

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over the claims in this proceeding pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. LEGAL STANDARD

Method moves the Court under Rule 59(e) to reconsider the Opinion. But Rule 59(e) only applies to judgments, which is "a decree and any order from which an appeal lies," FED. R. CIV. P. 54(a). Because Count II of the operative complaint remains pending, the Court did not enter a final judgment with the Opinion, *see Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1284 n.4 (11th Cir. 2001); *Gen. Television Arts, Inc. v. S. Railway Co.*, 725 F.2d 1327, 1331, n.5 (11th Cir. 1984), so the Opinion is "an interlocutory—i.e., nonfinal—order." *See Holmes v. Fresenius Kidney Care of Tuskegee*, 2023 WL 2413993, at *1 (M.D. Ala. Mar. 8, 2023) (citing *Tufts v. Hay*, 977 F.3d 1204, 1210 (11th Cir. 2020)).[4] Although the Federal Rules do not specifically provide for challenging an interlocutory order, Rule 54(b) allows a district court to "revise[] at any time" "any order or other decision . . . that adjudicates fewer than all the claims . . . before

---

[4] Here, and elsewhere in this Memorandum Opinion, the Court cites nonbinding authority. While the Court recognizes that these cases are nonprecedential, the Court finds them persuasive.

the entry of a judgment adjudicating all the claims . . . ." FED. R. CIV. P. 54(b).
"Furthermore, a district court has broad and 'plenary power' over its interlocutory orders,
and 'may therefore reconsider, revise, alter, or amend that order at any time prior to final
judgment.'" *Holmes*, 2023 WL 2413993, at *1 (quoting *Hardin v. Hayes*, 52 F.3d 934, 938
(11th Cir. 1995)).

Because Rule 59(e) does not apply, the Court does not have to adhere to the standard
applicable to a motion to reconsider a final judgment under Rule 59(e). *See Hertz Corp. v.
Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1132 (11th Cir. 1994) ("The strictures of Rule 59(e)
remain dormant, however, until a final judgment has been entered."). But "courts in this
Circuit have turned to [the Rule 59(e)] standard for guidance in reconsideration" of an
interlocutory order. *See Holmes*, 2023 WL 2413993, at *1 (citing cases). Under Rule 59(e),
"[t]he only grounds for granting [the] motion are newly-discovered evidence or manifest
errors of law or fact." *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999). The Eleventh
Circuit, however, has also "indicated that Rule 54(b) takes after Rule 60(b)," *Herman v.
Hartford Life & Acc. Ins. Co.*, 508 F. App'x 923, 927 n.1 (11th Cir. 2013) (citing *Fernandez
v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990)), and "is appropriate to
correct manifest errors of law or fact." *Id.* at 927 (citing FED. R. CIV. P. 60(b)).

Still, "reconsideration of an order is an extraordinary remedy and is employed
sparingly." *Hadley v. Coffee Cnty. Comm'n*, 2022 WL 2057762, at *2 (M.D. Ala.
June 7, 2022) (citation omitted). "Motions to amend should not be used to raise arguments
which could, and should, have been made before the judgment was issued." *O'Neal v.
Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992). Indeed, a party may not use a motion to

reconsider "to relitigate old matters, raise arguments or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).

## IV. FACTS

This case has a long history, and the Court declines to add record facts here. Instead, the Court relies on the facts presented in the Opinion. (*See* doc. 334 at 2–15). But, for clarity, the Court summarizes the Opinion and its reasoning. At summary judgment, three claims were before the Court: (1) false advertising against the Defendants (serialization) (Count I), (2) false advertising against H2 (Food and Drug Administration ("FDA") approval) (Count II), and (3) contributory false advertising against the Defendants (serialization) (Count III). The Court granted summary judgment on Counts I and III (serialization) but denied it on Count II because H2 failed to carry its burden to show there was no genuine dispute of material fact about FDA approval. (*See* doc. 334 at 22–29). In the Opinion, the Court found that serialization was not material to the purchasing decisions of participants in the fluoride pharmaceutical market and described serialization as a detailed product identifier. (*Id.* at 22–25). As part of its reasoning, the Court noted that Method did not argue materiality in its summary judgment response and failed to create a genuine dispute of material fact to survive the Defendants' motion on Counts I and III. (*Id.* at 25). The Court also found specific evidence regarding failure-to-supply penalties issued by Walgreens supported Method's standing to pursue its Lanham Act claims but did not warrant denying summary judgment. (*See id.* at 19–20, 25 n.17).

As it has before, the Court emphasizes the underlying issue in this case: whether H2's representations on its label led market participants to believe that its products were serialized in accordance with the Drug Supply Chain Security Act ("DSCSA"), causing consumers to purchase H2's products because they incorrectly believed they were serialized.

## V. DISCUSSION

For the following reasons, the Court declines to reconsider the Opinion as the Court finds that the Defendants' motion for summary judgment provided sufficient notice to Method that materiality was at issue. Method avers the Court committed a manifest error of law in the Opinion because Method lacked notice that the Defendants moved for summary judgment on materiality grounds. Because Method did not have notice, it argues, the Court should have ordered supplemental briefing on materiality (the third element of a Lanham Act claim) to allow Method to present additional arguments, which it does in the pending motion to reconsider. After reviewing the arguments presented, the Court finds that the Defendants provided sufficient argument in their summary judgment motion to put Method on notice that materiality was at issue. The Court further finds Method's additional arguments for serialization's materiality do not warrant altering the conclusion reached in the Opinion that Method fails to provide sufficient evidence of materiality to proceed past summary judgment.

## A.    Motion to Reconsider

Under either Rule 59(e) or Rule 60(b), Method's motion fails. In its motion for reconsideration, Method only argues the Court committed a manifest error of law.

"[M]anifest error is an 'error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Daughtry v. Army Fleet Support, LLC*, 2014 WL 466100, at *2 (M.D. Ala. Feb. 5, 2014) (quoting *Error*, *Black's Law Dictionary* (9th ed. 2009)); *see also Barry C.S. v. Kijakazi*, 625 F. Supp. 3d 1342, 1353 (N.D. Ga. 2022) ("To show a manifest error of law, [Method] must demonstrate 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" (quoting *In re Castleberry*, 437 B.R. 705, 707 (Bankr. M.D. Ga. 2010)). Method claims the Court committed such an error by granting summary judgment *sua sponte* because the Defendants did not properly raise the materiality issue in their summary judgment motion. The Court disagrees and finds Method was on notice that materiality was at issue from the Defendants' initial brief in support of the motion for summary judgment.

Method's argument proceeds in two parts. First, Method claims the Defendants did not adequately argue materiality to provide notice. Second, because the Defendants failed to raise the argument (and provide such notice), the Court's granting of summary judgment on this ground was effectively *sua sponte*. To support the first half of its argument, Method cites two opinions wherein the district courts found a movant did not adequately raise an argument on its summary judgment motion. (*See* doc. 339 at 11). In *Jemison v. Legacy Cabinets, Inc.*, the district judge found a statute-of-limitations argument raised in the section of its motion for one claim did not apply to a second claim on a motion for reconsideration. 2007 WL 9711592, at *3 n.5 (N.D. Ala. Apr. 5, 2007). Similarly, in *Connectus LLC v. Ampush Media, Inc.*, the district judge found an argument confined to "a single footnote" in both its summary judgment and reply insufficiently raised the issue

6

when they were "buried under subsections devoted to different issues." 2017 WL 2620541, at *8 (M.D. Fla. June 16, 2017). But here, the Court finds the Defendants provided more notice than the movants in *Jemison* and *Connectus* as explained below.

Under courts' interpretation of the Lanham Act, a plaintiff must show five elements to state a claim. *See, e.g.*, *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018). The Defendants correctly formulated this standard in their brief and proceeded to argue it. The Court does note that materiality was not the principal focus of the Defendants' argument as they focused on injury-in-fact and the first two prongs of a Lanham Act claim: falsity and deception.

Although materiality was not the primary focus of Defendants' briefing, it does not follow that Method lacked notice. The Defendants explicitly argued that references to National Drug Codes ("NDC") (which Method has consistently claimed is a proxy for prescription drugs and serialization)[5] were immaterial in their brief and titled a subsection in the brief accordingly. (*See* doc. 298-1 at 90–91 ("**H2's references to NDCs were immaterial**" (emphasis in original))). Further, the Defendants argued, "[T]he underlying premise of [Method's theory of liability] is incorrect. Far from purchasing on the basis of whether a product is serialized or not, customers principally consider the price and available volume of the product." (*Id.* at 106); (*see also id.* at 105 ("**The Evidence Indicates That Method's Theory of Injury is Wrong**" (emphasis in original))). The

---

[5] "Telling the market that [H2's] products had NDCs also had the added effect of suggesting that its products were serialized prescription drugs. As Reisetter explains, 'NDC numbers are only assigned to drugs and are not assigned to dietary supplements.'" (Doc. 323-1 at 32 n.9) (internal citations omitted).

Defendants' record evidence, including contracts between wholesalers and manufactures not requiring serialization (*See id.* at 48), supported these arguments, which the Court noted in the Opinion (doc. 334 at 24–25). Method did not offer any facts to the contrary in its response.

Taken together, the Defendants' materiality arguments (while not being the focus of their briefing) and record evidence still provided Method notice that materiality was at issue and a valid basis for the Court to grant summary judgment. Indeed, Method responded to the other arguments the Defendants made concerning NDCs—except for materiality—and claimed, "Method's false advertising claims can also be submitted to the jury on the theory that Defendants made literally false statements that the H2 fluoride products have NDCs." (Doc. 323-1 at 54–57). Now, Method attempts to minimize NDCs' importance.

The Court's conclusion that the Defendants raised materiality does not contradict Eleventh Circuit precedent. The Defendants argued in multiple places in both their opening and reply briefs that an indication of serialization (as Method describes it) or serialization explicitly is immaterial and other factors—not serialization—influence a consumer's purchasing decision. Still, Method cites *Ajomale v. Quicken Loans, Inc.*, 860 F. App'x 670, 673 (11th Cir. 2021) and *United States v. F.E.B. Corp.*, 52 F.4th 916, 933 (11th Cir. 2022) for the proposition that "passing references" in a brief are insufficient to raise an issue. In *Ajomale*, the Eleventh Circuit held a plaintiff abandoned one of her claims by only offering "passing references" to it, which "amount[ed] to little more than a conclusory statement that a genuine issue of fact exists" in response to summary judgment. 860 F.

App'x at 673.  That's not the case here.  The Defendants' arguments amounted to more than "passing references" and sufficiently raised the issue, placing it squarely before the Court.  Therefore, the Court did not disregard, misapply, or fail to apply controlling precedent, and summary judgment on Counts I and III was appropriate.  Because the Court rejects Method's argument that the Defendants did not sufficiently raise the materiality argument, the Court does not address the second argument that the Opinion was *sua sponte*.[6]

## B.    Method's New Arguments

Even if the Court's finding in the Opinion regarding materiality was *sua sponte*, the Court's conclusion on summary judgment would not change in light of Method's new materiality arguments, and the Court considering Method's additional arguments would obviate any lack-of-notice error in the Opinion.

---

[6] While the Court does not provide an extensive analysis, it does note that the cases Method cites regarding the *sua sponte* issue and whether the Court should have explicitly ordered additional briefing are distinguishable or support the Court's conclusion.  *Chapman v. Dunn*, 129 F.4th 1307, 1318–19 (11th Cir. Feb. 25, 2025), arose in the context of a pro se prisoner plaintiff and the answer and written report unique to that circumstance.  *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1312–13 (11th Cir. 2007) concerned the district court issuing an order for further briefing after the original summary judgment motion and opinion only addressed the plaintiff's claims and did not analyze the defendant's counterclaims. *Georgia State Conference of NAACP v. Fayette County Board of Commissioners*, 775 F.3d 1336, 1344 (11th Cir. 2015) reversed the district court when the defendant "expressly excluded [Plaintiff I] from their summary judgment motion against [Plaintiff II]," but the district judge granted summary judgment against both plaintiffs.  There, the Eleventh Circuit noted that Plaintiff I "received *no* notice that summary judgment might be entered against it and thus had no opportunity 'to formulate and prepare [its] best opposition to an impending assault upon the continued viability of [its] . . . defense.'" *Id.* (emphasis and alterations in original) (quoting *Massey v. Cong. Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997)).  *Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) affirmed a district court's grant of summary judgment when "[the court] did not formally notify [the plaintiff] that it was considering the new claims in the summary judgment proceedings, the merits of the claims were fully briefed[,] and evidence was accepted and considered . . . ."  In *Artistic Entertainment*, as here, "[the Court] had all the information necessary to the relevant legal issues, and [Method] raised no genuine question of material fact that would have precluded summary judgment." *Id.*

Method makes three new arguments in its motion for reconsideration: (1) "Serialization is material because it is an inherent characteristic of prescription drug products"; (2) "Evidence from both sides shows that customers expect products to be serialized"; and (3) "Representations about safety, like serialization, are necessarily material." (Doc. 339 at 15, 16, 18).  But these arguments continue to miss the mark, and the Court addresses each in turn.

### 1.    Inherent Characteristic

First, finding serialization is an inherent characteristic of a prescription drug product would not alter the Court's previous conclusion.  "[T]he 'inherent quality or characteristic' formulation adopted by [the Eleventh Circuit] does not replace the consumer-oriented nature of the materiality inquiry with a scientific one."  *J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 797 (11th Cir. 2020); *see also Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) ("To succeed on a claim of false advertising, the plaintiff *must* establish that 'the defendant's deception is likely to influence the purchasing decision." (emphasis added) (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002)).  Simply, Method fails to point to evidence showing *serialization*, as a characteristic, is material to consumers.

The Eleventh Circuit addressed—and rejected—a similar argument in *J-B Weld* to the one Method presents here.

> [The plaintiff] argues that advertising [the defendant's product] as an "epoxy" is material to consumers because "consumer[s] know[] that 'epoxy' is a specific and desirable category of adhesives." . . . [The plaintiff] has not presented any evidence that consumers are so scrupulous about the chemicals in their

> adhesives. . . . [C]onsumers likely only care about whether the
> product sticks two surfaces together effectively.

*J-B Weld*, 978 F.3d at 797.  The same reasoning applies to this case.  Method has not produced evidence that consumers prefer serialized fluoride products or non-serialized products, which the Defendants noted in their summary judgment motion (doc. 298-1 at 58 ("[T]here is no evidence in the record to show that any customers were actually confused as to whether [H2's] products were serialized and, moreover, that those customers purchased H2's products on the basis of that confusion.")).  Further, whether serialization is an inherent quality or characteristic of a prescription drug does not answer the question of whether serialization was material to a consumer.  Consistent with *J-B Weld*, the Court rejects Method's argument that simply because serialization may be an inherent quality or characteristic means it is material.

### 2.    Serialization Expectation

Second, Method argues consumers expect fluoride products to be serialized.  Method makes two arguments on this point:  (1) consumers expect a product to comply with federal law, and (2) the Court drew a reasonable inference against Method in its interpretation of Walgreens' failure-to-supply penalties and Walgreens' reversal of some of these penalties.  Neither argument persuades the Court.

Method's first argument about compliance with federal law would require the Court to make a finding that it previously stated it could not:  whether H2's fluoride products are dietary supplements or prescription drugs. (*See* doc. 37 at 10–11).  Method claims "testimony from both Method and Defendants makes clear that serialization is an important

11

factor for customers." (Doc. 339 at 16).  In support, it cites testimony from Cantey and Method's president that customers expect compliance with federal law. (*Id.* at 16–17).  But for the Court to agree with Method's premise, it would have to determine either whether H2's products complied with federal law, which would require the Court to classify H2's products as a dietary supplement or prescription drug, or whether consumers falsely believed H2's products complied with federal law in a manner that affected their purchasing decisions.  The first determination is within the power of the FDA—not this Court—, and the record is devoid of any evidence to support the second.[7]

Next, Method argues the Court did not draw a reasonable inference in its favor when viewing the Walgreens' failure-to-supply penalties.  Again, the Court disagrees and reaffirms its previous conclusion.  According to the record evidence, Walgreens assessed failure-to-supply penalties against Method from 2020 to 2022.  In response to the initial 2020 penalties, Method executives sent Walgreens a copy of the original complaint in this case and claimed Method's and H2's products were not substitutable.  As Method noted in its summary judgment response, "[Method's] executives [ ] testified that Method was successful in having Walgreens reverse some (but not all) of those penalties after Method appealed Walgreens'[] assessment and showed H2's dietary supplements were not

---

[7] According to H2, its fluoride products comply with federal law by not being serialized because they are dietary supplements.  While Method does not explicitly make the argument, Method asks the Court to make a series of inferences to reach Method's desired conclusion.  Essentially, Method asks the Court to reason that hypothetical consumers view H2's products as prescription drug products and serialized. Thus, the product's lack of serialization makes them non-compliant with federal law in the eyes of the hypothetical consumer.  The hypothetical consumer's ill-informed belief about H2's non-compliance would then be material to the hypothetical consumer's purchasing decision.  This chain of inferences is unsupported in the record and asks the Court to infringe upon the FDA's authority regarding the appropriate classification of the fluoride products.

substitutable." (Doc. 323-1 at 43). Method claims, "The most logical inference from this evidence is that Walgreens found serialization important and therefore did not think that H2's products were substitutable for Method's." (Doc. 339 at 17).

But, as the Defendants point out, additional evidence belies Method's proposed inference as Walgreens continued to substitute H2's fluoride products for Method's and assess failure-to-supply penalties after Method sent Walgreens a copy of the original complaint in this case in September 2020. (Doc. 347-1 at 24 (citing doc. 298-1 at 104–05)). If serialization was as material to Walgreens' decision as Method claims, Walgreens likely would have ceased assessing the penalties and substituting H2's products for Method's, which Walgreens did not. Essentially, Method asks the Court to focus on just one facet of the failure-to-supply penalties to draw an inference, but the Court only draws "justifiable inferences" in the non-movant's favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), which for the reasons the Court articulated, does not include inferring serialization was material to Walgreens' decision to rescind some (but not all) of the failure-to-supply penalties.

As the Court previously noted, Method had an opportunity to clarify exactly why Walgreens reversed the failure-to-supply penalties and elected not to do so, choosing instead to speculate why Walgreens made these decisions. But "speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion." *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (alteration in original). To quote the Eleventh Circuit,

> [the plaintiff] did not ask respondents [to a survey] whether
> their conclusions about the presence of steel would have
> affected their decision to purchase one product or the other.
> Without asking that question or something similar, the survey
> fails to address the critical issue of effect on purchasing
> decisions, and therefore cannot be probative of materiality.

*J-B Weld*, 978 F.3d at 798.  Method never asked Walgreens the question about the reasons

underlying its decision to find H2's and Method's products different.[8]  "Without asking

that question or something similar, [Walgreens' rescinding most of the failure-to-supply

penalties] fails to address the critical issue of effect on purchasing decisions, and therefore

cannot be probative of materiality." *J-B Weld*, 978 F.3d at 798.

### 3.    Safety

Third, Method argues that serialization relates to safety and is therefore material,

citing to its president's deposition and expert testimony, but this record evidence and

argument fail to persuade the Court that its previous conclusion was erroneous.  While the

Court accepts the basic premise that safety concerns may be material, the Court is not

persuaded in this instance because Method again does not show that customers make

purchasing decisions based on a preference for serialized or non-serialized products

because of a difference in safety.  As the Eleventh Circuit noted in *J-B Weld*,

> [the plaintiff] [ ] contends that chemical epoxies . . . have
> different "physical properties," including "safety and odor
> differences." Maybe so.  But [the plaintiff] has not made any
> showing that these differences would matter to a consumer.
> Without evidence on the issue, it would be pure speculation to
> hold that, due to some difference in the function or efficacy of

---

[8] For similar reasons, Kaiser's 30(b)(6) representative's testimony does not support Method's argument either.  In the deposition, Kaiser's representative could not answer whether he expected prescription drugs to be serialized (*see* doc. 298-20 at 11–12) and was not asked whether serialization influenced his purchasing decisions (*see generally id.* at 3–23).

> the product, consumers are materially deceived when they
> purchase an adhesive advertised as an "epoxy" and receive an
> MMA-chemistry product. This speculation cannot sustain [the
> plaintiff's] claim of materiality.

978 F.3d at 798. Method fails to show that, from a consumer's perspective, safety (in the

context of serialization) materially affects purchasers' behavior. Thus, it cannot sustain a

claim of materiality.

## VI.  CONCLUSION

As it did in the Opinion, the Court emphasizes that the record evidence suggests

serialization was not material. Specifically, the Court highlights one of the Defendants'

arguments and two pieces of evidence: (1) price and availability of products affect

consumers' decision (as the Defendants argued in their summary judgment motion), (2)

serialization was not required in contracts with wholesalers, and (3) the FDA did not begin

enforcing serialization until 2023—three years after H2 changed its label—even though

the DSCSA still required serialization before that date. Nothing Method presented in its

motion for reconsideration persuaded the Court that it committed a manifest error of law

in granting summary judgment on Counts I and III.

For the foregoing reasons, and for good cause, it is

ORDERED that the motion for partial reconsideration (doc. 339) is DENIED.

DONE this 8th day of August, 2025.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE